RYAN *vs.* DAYTON.

The ancient rule, that when the service of a person hired to labor for a speci-fied time ceases within that time, there can be no apportionment of wages for the actual time of service, and consequently no recovery for the services ren-dered during such time, has recently been relaxed in particular cases.

Where the contract is for the personal services of the individual who is hired, and can not be performed by the agency of another person, there is an im-plied condition, although there may be no express stipulation upon the sub-ject, that an inability to labor during a part of the stipulated time, so far constitutes an excuse for not laboring during the time covered by such ina-bility, that the party hired is not thereby deprived of the right to a rea-sonable compensation for the services actually performed.

The plaintiff contracted with the defendant to labor for him for one year from the first day of August, for one hundred and sixty dollars, to be paid at the end of the year. Having labored from said first day of August, until the first of January following, he left the service of the defendant, on account of ill health. Afterwards, on his recovery, he offered to resume his work, but the defendant refused to receive him into his service. On the 28th day of Feb-ruary, the plaintiff brought his action of assumpsit to recover the value of the services which he had already rendered. Held, 1. That it was not necessary to determine whether such agreement was within the statute of frauds; be-cause if it was, while it remained executory the law would give it no effect; but that, as the services were not intended to be rendered gratuitously, in the absence of any valid special contract between the parties, the law would imply a promise to pay the plaintiff what he reasonably deserved to have. 2. That in determining what that amount should be, the court would not entirely disregard the agreement as to the price for the services. 3. That if such agreement was not within the statute of frauds, the omission of the plaintiff to labor during his sickness was for a reasonable cause, and therefore he had a right to treat his dismissal by the defendant as a rescission of the agree-ment. 4. That the contract being thus terminated, the plaintiff might recover for the services rendered, without waiting for the expiration of the time fixed in the agreement for its performance.

*Assumpsit* for work and labor.

THE cause was referred to an auditor, who at the term of the superior court for Litchfield county, holden in March, 1856, made his report, embracing the following facts:

On the 30th and 31st of July, 1854, the plaintiff labored for the defendant by days' work, for which the defendant paid the plaintiff; on the last day aforesaid, it was mutually agreed, verbally, between the plaintiff and defendant, that the plaintiff should labor for the defendant at farming for the term of one year, to commence the next day, and that the defendant should pay the plaintiff one hundred and sixty dollars for the year, payment to be made at the close of the term.

Under this contract, the plaintiff commenced laboring for the defendant on the 1st of August, and continued so to labor until January, 1855, when on account of ill health, without giving notice to the defendant, he left the defendant's premises, without alleging any cause for so doing at that time

After the plaintiff had been absent from the employment of the defendant about ten days, he sent his brother to inquire of the defendant if he then wanted the plaintiff to return to work for him; and the defendant sent word to the plaintiff declining to receive him. Subsequently, and within a week, the plaintiff came in person, and then offered to go to work on his contract, and the defendant then refused to let him do so, and told him that he did not want him any more on his farm.

The plaintiff then went away, and on the 28th day of February, 1855, commenced the present suit. The auditor found that the plaintiff performed his labor faithfully, and that his services were worth at the rate of one hundred and sixty dollars per annum, for the time that he worked.

If upon the foregoing facts the plaintiff should be entitled in law to recover, the auditor found the defendant indebted to him; but if not so entitled to recover, that the defendant owed him nothing.

The court accepted the report and reserved the questions arising thereon for the advice of this court.

*Webster*, for the plaintiff.

1. The plaintiff is entitled to recover pro-rata for the time he worked, because the contract was mutually abandoned, and he was excused from its fulfilment by the conduct of the defendant. Chit. on Cont., 579.

2. The complete fulfilment of the contract by the plaintiff, is not a condition precedent to his right to recover for the service he has rendered, when he is prevented from such fulfilment by the defendant, or where the defendant waives such fulfilment. *Dayton* v. *Dean*, 23 Conn. R., 99. 11 Verm., 560, 561. Chit. on Cont., 578.

3. The contingency of the plaintiffs' sickness entered into the contract of the parties, at its inception, by implication. And his ill health furnishes a sufficient excuse for his absence from the service of the defendant. Such absence was no excuse for the defendant's refusal to allow him to complete his contract. 2 Kent. Com., 258. 11 Verm., 557. Chit. on Contr., 576.

4. The contract, by its express terms, was not to be performed within one year from the making thereof, and not being in writing, was therefore void by the statute of frauds. *Comes* v. *Lamson*, 16 Conn. R., 246.

The plaintiff is therefore entitled to recover what his services are reasonably worth.

5. But if there was a valid contract between the parties, and the plaintiff left the defendant's service before it was fully completed, he still may recover so much as his services were reasonably worth. Chit. on Contr. 580, note. *Button* v. *Turner*, 6 N. Hamp., 481.

*Phelps, Hollister* and *Beman*, for the defendant.

1. The contract is not within the statute of frauds.

2. The performance of the entire contract is a condition precedent to the plaintiffs' right to recover. *Dutch Church*

*of Albany* v. *Bradford*, 8 Cow., 57. *Paige* v. *Ott*, 1 Denio, 406.

3. By express stipulation, the payment is to be made at the end of the year; and therefore the action is prematurely brought.

4. The plaintiff left the defendant's service " on account of ill health," but it is not found that his ill health prevented the performance of the contract. He left without assigning that reason, and without notice.

5. If the sickness prevented the performance of the labor *ex necessitate* it does not hasten the time of payment, against the express stipulation of the parties. *Alexander* v. *Smith*, 4 Denio, 364. *Chauncey* v. *Overman*, 1 Dev. & Bat., 402.

6. The employer does not take the risk of the health of the employed. The contract to labor is absolute. It was the right and duty of the plaintiff to have inserted a provision in the contract for such a contingency. Broom's Legal Maxims, 182. *Atchison* v. *Ritchie*, 10 East, 533, 534. 13 M. & W., 487. 15 M. & W., 253, 262.

STORRS, J. We do not deem it necessary in this case to determine the question which has been made, whether the agreement between these parties is within the provisions of the statute of frauds. If it is, the law would give it no effect while it remained executory, and no action could afterwards be maintained on it, nor could it be used as a defence to an action brought for services rendered under it. It would be treated for these purposes, as though it never existed. But where the services, as in the present case, were not intended to be rendered gratuitously, the law would in such absence of any valid special contract between the parties, imply a promise on the part of a person who employed another to labor, to pay the latter what he reasonably deserved to have for his services, and he would be entitled to recover that sum. But, in determining what that amount should be, we are by no means prepared to adopt the principle which has been claimed to follow from the case of *Comes* v. *Lamson*, (16 Conn. R., 246,) that the price actually agreed upon for the

services is not to be regarded. It is obvious, that such a rule would be productive of great injustice to an employer, where the agreement, invalid under the statute of frauds, was that the services should be rendered for a particular sum, which was less than such services would be worth, if estimated independently of any such agreement, and as if no price had been stipulated. (See *Clark* v. *Terry*, post.) If, however, the agreement in this case is not within that statute, we think that, on the facts found by the auditor, the plaintiff is entitled to recover the same amount. Considering it as a valid agreement, if the omission of the plaintiff, during the time when he was disabled by sickness from laboring for the defendant, was a violation of the special contract between them, it justified the defendant in refusing to receive the plaintiff back into his service; but if it was not, it constituted no such justification, and the plaintiff had the right to treat, as he did, such refusal as a rescission of the contract by the defendant, and thereupon to bring an action on the promise which the law would, on the abandonment of that contract, imply on the part of the defendant, to pay the value of the services which had been rendered. And, as an end would thus be put to the special contract, and the plaintiff's right to recover would rest only on such implied promise, he would not be bound to wait until the expiration of the time fixed by that contract for its performance, as he must have done if it were not rescinded, and he had sought to enforce it, but might sue immediately.

The question then is, whether the omission of the plaintiff to labor during his sickness, was a sufficient reason, when he recovered and offered to continue to labor, for his dismission by the defendant, and this must depend on the true nature of the duty or obligation imposed on the plaintiff by the agreement between them. If such omission to labor constituted a wilful breach of such agreement, or is to be considered as standing on the same ground as a voluntary abandonment of the service of the defendant, it justified him in refusing to receive the plaintiff back into his service. If

it came short of this, we are of opinion that it furnished no such justification.

It is difficult to reconcile the reported cases on the subject of the liability of an employer of a person who is hired to labor for a specified time, on wages to be paid at the expiration of that time, where such person has, without his fault, failed to labor for the whole of such time, or to extract from them any well defined rule. There is much confusion in them which seems to have arisen from the different views entertained by the courts, on the question whether such a contract of hiring is to be governed by the principle which prevails in regard to a contract to do a specific piece of work as to build a house, or a machine, for a particular sum; in which case the contract is held to be entire, and the performance of it a condition precedent to any right of action against the employer, and the non-fulfillment of it is not excused by inevitable necessity. We do not propose to examine those cases in detail. In the earliest of them it was established, that the same principle applied to both of these species of contracts, and that therefore where the service of a person hired to labor for a specified time, ceased within that time, there could be no apportionment of wages for the actual time of service, and consequently no recovery for the services rendered during such time. But this rigid and unreasonable rule has recently been relaxed, and it is now generally, if not universally held, that wages may in particular cases be apportioned; which, in our judgment, is much more in accordance with the true character of such a contract, the presumed intention of the parties, and the demands of justice. A contract of this sort is for the personal services of the individual who is hired, and can not be performed by the agency of another person, and in this important respect is peculiar and different from a contract by which one agrees to do a particular piece of work, as for instance, to build a house, which may be performed through another person. It is unreasonable to suppose that the parties to such an agreement as the former, knowing that the person hired is liable to be interrupted in his labor by the act of God or inevitable necessity,

intended or expected, although there should be no express stipulation on the subject, that he should in such an event, not only lose his services, but as the case might be, be bound even to repay to his employer what he has received in part payment for them. And it is obvious that a rule which would subject him to these consequences, would be not merely harsh but unjust. Viewing the present as a contract for the personal services of the plaintiff, and which could only be performed by himself, we think that, from its nature, a condition was impliedly attached to it, that an inability to labor during a part of the time stipulated, produced by inevitable necessity, should so far constitute an excuse for not laboring during that period, that he should not thereby be deprived of a right to a reasonable compensation for the service performed by him under it; and that the rule, that where a person by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, which properly understood, we do not intend to impugn, is not applicable to such a contract. 1 Co., 98. *Williams* v. *Hyde,* Pal., 548. 1 Shep. Touch., 180. Gilbert on Covenants, 472. *Nash* v. *Ashton,* Skin., 42. In regard to a contract of this kind, we are induced to adopt, as the most suitable and just general rule, in a case where the servant leaves the service before the end of the time for which he was hired, the one laid down by Chancellor Kent, (2 Comm., 258–9,) that unless he so leaves without reasonable cause, or is dismissed for such misconduct as justifies the dismission, he does not forfeit a right to his wages for the period for which he has served. It should be observed, however, that we do not intend to say that in such a case, he would necessarily be entitled to a proportional part of the sum agreed to be paid for the whole time, and that it should not be reduced so as to indemnify the employer for the loss which he has sustained by the non-fulfillment of the agreement. This case calls for no decision on that point. Applying the rule we have adopted to the present case, we can not entertain a doubt that the absence of the plaintiff from the defendant's service, being occasioned

by sickness, was for a reasonable cause, and therefore constituted no sufficient reason for his dismissal; and that the plaintiff is consequently entitled to recover the value of his services as found by the auditor.

We place our opinion on the distinction between a contract for personal services, and one in which they might be lawfully performed by the contractor either personally or by the agency of another, and it will be perceived that our views are, for the most part, in accordance with those of the supreme court of Vermont, in *Fenton* v. *Clark*, (11 Verm., 557,) which was a case in all substantial respects like the present.

Advice accordingly.

In this opinion, the other judges, ELLSWORTH and HINMAN, concurred.