NAPOLEON HEBER *vs.* THE UNITED STATES FLAX MANUFAC-
TURING COMPANY.

An operative in the mill of the Flax Manufacturing Company had agreed in writing to give "two weeks' notice of his desire to quit the service of said company at any time, or in default of said two weeks' notice to forfeit two weeks' pay."

*Held*, that the agreement did not apply to a temporary absence; that in case of a temporary absence without leave the operative might properly be discharged, but that there would be no forfeiture, under the agreement, of wages then earned.

EXCEPTIONS to the Court of Common Pleas.

*May* 7, 1881. DURFEE, C. J.   This case, originally commenced in a Justice Court and brought by appeal to the ·Court of Common Pleas, comes up here on exceptions.   It is *assumpsit* for work and labor done by the plaintiff as an operative in the mill of the defendant corporation.   The plaintiff on entering the service of the corporation subscribed the following agreement, .to wit :

" The undersigned hereby covenants and agrees to and with the U. S. Flax M'f'g Co., in consideration of such wages as shall be agreed upon between himself or herself, and his or her overseer, superintendent, or any person authorized to hire the operatives for said Manufacturing Company, that he or she will well and truly observe all the regulations of said Company, and *particularly* that he or she will give two weeks' notice of his or her desire to quit the service of said Company, at any time, or that in *default* of said two weeks' notice, he or she shall forfeit two weeks' pay."

The plaintiff testified in support of the action that he worked as a weaver in the employ of the defendant corporation during the year 1880, up to Saturday, July' 31 ; that he was sick that day and had to absent himself from work ; that he told the overseer he was sick and asked the overseer to let him off ; that he went in on the following Monday and was told there was no more work for him ; that at the request of the overseer he called for his pay-bill in the afternoon ; that his claim was for one hundred and forty-five cuts at twenty-one cents a cut, and the bill presented to him allowed him for only sixty-five cuts, the balance being treated as forfeited ; that he asked for payment in full or for leave to work out his notice, which was refused.   The plaintiff admitted in cross-examination that he did not remain at home the day he was absent, but went down the river to Rocky Point. In defence testimony was submitted to show that the plaintiff asked leave of absence on July 31, which was refused, and that he absented himself. notwithstanding the refusal ; that he did not ask leave of absence on the ground of sickness, but to go down the river, and that, wilfully disregarding the wishes and interests of his employers, he did go down the river on a pleasure excursion.   The defendant requested the court to charge the jury that

if the plaintiff left work even for one day without necessity and against the express refusal of permission to leave, he thereby committed a breach of his contract and incurred the stipulated forfeiture of his wages ; and that, even in case of sickness, if he left for a day without giving notice of his sickness, he would violate the contract and incur the forfeiture. The court refused so to charge, but did charge the jury in substance that the contract did not apply to a temporary absence, but to a leaving or quitting the service of the company, and that if the plaintiff was temporarily absent without consent he might properly be discharged, but there would be no forfeiture as such of wages then earned. The defendant excepted, and, the jury having found a verdict for the plaintiff for his full claim, now petitions for a new trial for error in the ruling.

We do not discover any error in the ruling. A man does not quit the service of another when he merely takes a holiday without the other's consent. Still less does he quit the service if he only breaks off work for a day because he is sick. To quit a service, taking the words in their usual sense, is not to leave the service for a day expecting to return the next day, but to abandon it. A man does not know a fortnight beforehand when he is going to want a day on account of sickness, or even for recreation, and therefore it is not to be supposed that the parties could have had any such transient intermission of service in mind when they stipulated for the fortnight's notice. It is urged that the plaintiff took his day not only without consent, but after consent had been positively refused. We do not see how this brings the case under the contract in the absence of testimony to show that he knew or had reason to know that taking the day after such refusal would result in his dismissal from service. It is also urged that scarcely less mischief would result from such an intermission of service than from its total abandonment without the notice. That may be so, but in order to remedy the evil we cannot give the contract a strained and unnatural construction. The defendant refers to *Partington* v. *Wamsutta Mills*, 110 Mass. 467, and *Naylor* v. *Fall River Iron Works Company*, 118 Mass. 317, as cases which are directly in point in his favor. We do not find, however, that these cases were decided upon such a construction of the contracts

involved as the plaintiff here contends for. What those cases do seem to decide is that where an employee under such a contract leaves without notice and without cause it is for the jury to determine whether he has abandoned the service, from evidence (not of his undisclosed intention but) of his acts, and that the forfeiture will be incurred, notwithstanding his intention to return, if he remains away so long as to warrant the master in regarding his absence as permanent and procuring another person to supply his place. The case at bar is different from either of these cases.

The exceptions are overruled, and the judgment of the court below affirmed with costs. 　　　　　　　*Exceptions overruled.*

*Hugh J. Carroll*, for plaintiff.

*C. Frank Parkhurst*, for defendant.