ALBERT D. CROMBIE *vs.* WILLIAM McGRATH.

Suffolk.    Jan. 20. — June 24, 1885.    FIELD, DEVENS, & COLBURN, JJ., absent.

An agreement in writing, not under seal, was made, by which a minor was bound by his father to a master for a certain time, and the master agreed to teach him a certain art. Subsequently the master sold his business, and the father agreed to continue the agreement with the successor. The son afterwards had an opportunity to work for some one else, and his then master released him from his apprenticeship, in consideration of the father giving a promissory note for a certain sum, payable to the master. *Held,* that, although the agreement of apprenticeship did not comply with the statutory requirements, it was good at common law, and that the note was given for a sufficient consideration.

CONTRACT upon a promissory note for $129, dated April 22, 1882, payable to the plaintiff or order, and signed by the defendant. Answer, want of consideration. Trial in the Superior Court, before *Mason,* J., who allowed a bill of exceptions, in substance as follows :

On April 16, 1880, the defendant, the defendant's son, and one John L. Connolly entered into a written agreement, not under seal, by which the defendant bound his son, with his assent, to Connolly, until March 1, 1883, to learn the art of wood-engraving, and Connolly agreed to teach him the art, and

to pay him a certain sum weekly after the first six months. On the same day, the defendant and Connolly executed, each to the other, bonds in the sum of $200, to secure performance of the agreement.

In March, 1881, Connolly sold his wood-engraving establishment to the plaintiff, and moved out of the State. The son had remained with Connolly to this time, and afterwards remained with the plaintiff, who paid him in accordance with the articles of apprenticeship. The son expressed a willingness, at the suggestion of the plaintiff, to continue with the plaintiff for the full unexpired balance of the term of apprenticeship, and his father also desired him to remain and work out his full time and learn engraving. On October 25, 1881, the defendant signed the following, which was written by the plaintiff on the back of the original agreement: "Boston, October 25, 1881. I hereby continue the within agreement and indenture with Albert D. Crombie, successor to John L. Connolly, for the full unexpired balance of the term of apprenticeship."

The plaintiff testified that, when the continuance was spoken of between himself and the son, he told the latter it would be well for his parents or father to come in, " so that there would be something definite or binding about it. I asked the son to have his father come in and see me, and talk the matter over and have it fixed, and finally he did come in, on the date at which the paper was signed, and we talked the matter over in the presence of the son. I sent by the son and told him to come, and we came to this arrangement, and I wrote the indorsement on the back of the agreement which had been passed between Connolly and McGrath."

The son then continued with the plaintiff until April 22, 1882, the date of the note declared on, when he left the plaintiff, who released him from any further obligation to remain; the defendant having given the note declared on in consideration of such release.

At the same time that the note declared on was delivered by the defendant to the plaintiff, the plaintiff delivered to the defendant's son a writing, signed by the plaintiff, of which the following is a copy: "Boston, April 22, 1882. This is to certify that I have released Master Wm. F. McGrath from the

terms of his apprenticeship to me, and that he is free to engage with any other party."

The son had, before making the arrangement to leave the plaintiff, made a conditional engagement to work for another person at twice the wages paid by the plaintiff, and the other person would not take him into his employ until he got a release from the plaintiff, and the note was given to get the release. The sole consideration of the note was the release of the son from whatever obligation he and the defendant were under to the plaintiff by reason of said written agreements referred to.

It appeared that no money, as wages or otherwise, had been at any time paid to the defendant by the plaintiff or by Connolly, but payments under the agreement were made to the son. The defendant testified that he did not know of his own knowledge whether the son was paid, or what he was paid; but the son received money, used some himself, and gave some to the defendant.

It may be considered that the defendant was pecuniarily benefited and the plaintiff pecuniarily damaged by the latter's loss of the services of the son. All three thought the agreement binding when the release and note were exchanged.

At the close of the evidence, the defendant requested the judge to rule that the plaintiff had not maintained his action. The judge refused so to rule, and ordered a verdict for the plaintiff. The defendant alleged exceptions.

*J. C. Crowley & J. A. Maxwell,* for the defendant. 1. The agreement of apprenticeship, not being under seal, was void. Gen. Sts. c. 111, § 6. Pub. Sts. c. 149, § 5. If not void originally, it became so by the subsequent acts of the master. *Davis* v. *Coburn,* 8 Mass. 299. *Lobdell* v. *Allen,* 9 Gray, 377. As the contract was not binding, the release was worthless, and the note declared on was without consideration.

2. Considered as a contract at common law, it raised the relation of master and servant, not of master and apprentice, and a release from apprenticeship is a different thing from a release from service. If one agrees to buy what he and the seller suppose to be a barrel of flour, and it proves to be a barrel of salt, there is no sale. A bond given a judge of probate which is not a valid probate bond is not good at common law, if the

sureties signed under the mistaken belief that the principal was subject to the jurisdiction of the court. *Conant* v. *Newton*, 126 Mass. 105. So, in this case, the original indenture of apprenticeship did not bind the parties, they having signed under the mistaken belief that the contract created all the rights and duties incident to apprenticeship.

3. The burden of proof was upon the plaintiff throughout to show consideration, and to define the consideration. *Delano* v. *Bartlett*, 6 Cush. 364. It was not sufficient to show what would in law be a state of facts constituting a sufficient consideration, but it is necessary further to show that such a consideration was in the mind of the parties. *Warren* v. *Durfee*, 126 Mass. 338. *Manter* v. *Churchill*, 127 Mass. 31. In *Phelps* v. *Townsend*, 8 Pick. 392, the contract was not one of apprenticeship, but of service. In *Caden* v. *Farwell*, 98 Mass. 137, the contract is not set out; but it is clear that what Gray, J., says about the contract being good at common law is a dictum.

*O. T. Gray & W. C. Cogswell*, for the plaintiff.

W. ALLEN, J. The only question is, whether there was any evidence of consideration for the note declared on.

The contract, though not a statutory indenture of apprenticeship, was valid between the parties to this suit; and, under it, the plaintiff had a right, against the defendant, to the services of his minor son. *Day* v. *Everett*, 7 Mass. 145. *Lobdell* v. *Allen*, 9 Gray, 377, 381. *Caden* v. *Farwell*, 98 Mass. 137. The release of the right to such service was therefore a sufficient consideration.

Besides, the son was in the actual service of the plaintiff, and the condition of his leaving that service and obtaining higher wages was the giving of the release by the plaintiff. The case finds that the defendant was pecuniarily benefited, and the plaintiff pecuniarily damaged, by the loss of services, which would not have occurred but for the release.

*Exceptions overruled.*